UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD GORDON LAINE,<br><br>                      Plaintiff,<br><br>v.<br><br>SHERIFF KIERAN DONAHUE; CAPTAIN PATCHETT; LT. RUSSELL DONNELLY; LT. ENGLE; SGT. HAMMOND; CORPORAL BIGGS; and DEPUTY C. JORDAN,<br><br>                      Defendants. | Case No. 1:24-cv-00329-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Richard Gordon Laine's Complaint because of Plaintiff's status as an inmate. A "conditional filing" means that a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that state a frivolous or malicious claim, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

Having reviewed the record, the Court enters the following Order permitting Plaintiff to proceed on some of the claims in the Complaint.

**1.**   **Standards of Law for Screening Complaints**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

2. **Factual Allegations**

Plaintiff is an inmate currently held in the Canyon County Jail. It appears Plaintiff is a pretrial detainee.

Plaintiff asserts that Defendant jail officials have enforced against Plaintiff a jail policy that initially prohibited inmates from receiving more than five books through the mail. *Compl.*, Dkt. 3, at 7–11. The jail policy then changed, and it now prohibits inmates from receiving any books or other materials through the mail. *Id*. at 11–15. Plaintiff has

been denied numerous publications and other materials—such as photos from loves ones—as a result of this policy.

Plaintiff also challenges the confiscation of several books by jail deputies during a cell search. *Id*. at 10–11.

In addition, Plaintiff asserts that the jail restrooms are unsanitary and lack adequate drainage. Specifically, the restrooms allegedly have black mold, maggots or other insect larvae, and stagnant water. *Id*. at 16.

Finally, Plaintiff alleges that he fell while getting out of the shower at the jail. In doing so, he reinjured a broken hip and suffered nerve damage in his neck. Plaintiff was evaluated by jail medical personnel three days later and was prescribed Tylenol. He was denied other pain medication. Plaintiff does not identify any jail medical provider who was involved with his medical treatment.

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. *Id*. at 1. He seeks monetary, injunctive, and declaratory relief. *Id*. at 18–19.

3.     **Standards of Law for § 1983 Claims**

To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Jail officials and jail medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*,

556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists … a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in conduct showing "a reckless or callous indifference to the rights of others." *Id.* at 1205–09 (internal quotation marks omitted). A plaintiff may also seek injunctive relief from officials who have direct responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Oregon State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

4.  Discussion

    A.  *First Amendment Claims*

Plaintiff challenges Defendants' adherence to jail regulations restricting or prohibiting him from receiving books and other materials through the mail.

To state a claim for relief under the First Amendment, Plaintiff must plausibly allege that the jail's regulations are not "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In *Turner*, the Supreme Court identified four factors to consider when determining whether a prison regulation violates the First Amendment: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89–93.

The *Turner* analysis appropriately allows jail and prison officials substantial leeway in the management of their institutions because "[s]ubjecting the day-to-day judgments of [jail or] prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.* at 89. Federal courts must apply the *Turner* test so as to "accord great deference to [jail or] prison officials' assessments of their interests." *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

The *Turner* analysis applies to pretrial detainees. *See Bull v. City and County of San Francisco,* 595 F.3d 964 (9th Cir. 2010). The United States Court of Appeals for the Ninth Circuit has clarified that, in applying the *Turner* test to pretrial detainees—who may not be punished—the legitimate penological interests in security and safety apply, but "the penological interests in punishment and rehabilitation may not be applicable outside the prison setting." *Id.* at 974 n.10. Therefore, in considering claims of pretrial detainees challenging jail regulations or policies, "courts must defer to the judgment of [jail] officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 322-23 (2012).

The First Amendment does not impose on jail officials "an affirmative duty" to provide news materials or other publications. *Collins v. Burl*, No. 2:11-CV-40-DPM-BD, 2011 WL 2457532, at *1 (E.D. Ark. June 17, 2011) (holding that inmate's claim failed as a matter of law where defendants did not provide inmate with published "material or access to television news"). However, inmates *do* have a First Amendment right to receive published materials sent to them from third parties, subject to reasonable limitations under *Turner*. *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *cf. Prison Legal News v. Cnty. of Bernalillo*, No. 15-CV-107-JAP/KBM, 2015 WL 13662872, at *1 (D.N.M. June 16, 2015) (finding that a regulation prohibiting inmates from receiving books through the mail was constitutional under *Turner v. Safley*).

At this early stage of the proceedings, the Court will liberally construe the Complaint to assert plausible First Amendment claims regarding the jail's restrictions,

against all Defendants, on Plaintiff's receiving books and other materials through the mail.

### B. Conditions-of-Detention Claims

Plaintiff challenges the conditions of his detention with respect to the jail restrooms and his medical treatment after his fall. The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving an individual of life, liberty, or property without due process of law. Pretrial detainees have a due process right to adequate conditions of detention, including adequate medical treatment, while they are awaiting trial.[1] A due process violation occurs when the conditions to which the detainee is subjected amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Conditions-of-detention claims are analyzed using a standard of "objective deliberate indifference." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). Under that standard, a detainee must establish the following elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* The application of this standard "will necessarily turn on the facts and circumstances of each particular case." *Id.* (internal quotation marks and alteration omitted).

---

[1] Plaintiff cites the Eighth Amendment in the Complaint, but that amendment applies to convicted prisoners. Pretrial detainees' right to minimally adequate conditions of detention are analyzed under the Fourteenth Amendment's Due Process Clause. Because it appears Plaintiff is a pretrial detainee, the Court will use a due process analysis.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 7

Although the Court uses an objective standard in evaluating conditions-of-confinement claims of pretrial detainees, this standard must not be confused with the objective standard used for evaluating negligence claims. This is because negligence—the "mere lack of due care" by a governmental official—"does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071; *see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (stating that negligence and ordinary negligence are not actionable under § 1983, because such actions are not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person"). Therefore, a pretrial detainee complaining of unconstitutional conditions of detention must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

The Complaint states plausible injunctive-relief claims of unsanitary conditions of detention with respect to the jail's restrooms against Sheriff Donahue, as the Sheriff appears to be the official with direct responsibility over the condition of the jail restrooms. *See Rounds*, 166 F.3d at 1036. However, because Plaintiff does not identify any particular Defendant who was personally involved with permitting the restrooms to become or to remain unsanitary, he may not proceed on his monetary damages claims regarding the jail restrooms against Sheriff Donahue—or, for that matter, any of his restroom claims against any other Defendants. *See Taylor*, 880 F.2d at 1045.

The Complaint does not state a plausible claim of inadequate medical treatment. Defendants, who are all jail officials and not medical providers, were not personally involved in Plaintiff's medical treatment, *see id.*, and Plaintiff has identified no medical

INITIAL REVIEW ORDER BY SCREENING JUDGE - 8

provider who was. Moreover, as individuals without medical training, the Defendant jail officials were entitled to rely on the judgment of medical providers as to appropriate diagnosis and treatment. *See McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted). Thus, the Complaint fails to state a claim on which relief may be granted as to Plaintiff's jail medical treatment.

### C.    *Deprivation of Property*

Plaintiff asserts that sheriff's deputies confiscated a number of his books. However, the right to due process is "not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels*, 474 U.S. at 328. Moreover, even the *intentional* deprivation of personal property by prison officials will not support a due process claim under § 1983 if the prisoner has an adequate remedy under state law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Idaho has adopted the Idaho Tort Claims Act ("ITCA"), Idaho Code § 6-901, *et seq*., to provide a remedy for citizens injured by the tortious acts of governmental entities, officials, and employees. As a general rule, "every governmental entity is subject to liability for money damages arising out of its negligent or otherwise wrongful acts or omissions and those of its employees acting within the course and scope of their employment or duties." Idaho Code § 6-903(1).

One exception to this rule is that "any law enforcement officer," acting "without

INITIAL REVIEW ORDER BY SCREENING JUDGE - 9

malice or criminal intent and without gross negligence or reckless, willful and wanton conduct," shall not be liable for a claim that "arises out of the detention of any goods or merchandise." Idaho Code § 6-904B(1). It is unclear whether this exception to liability applies when a jail official deprives an inmate of personal property. Importantly, however, even assuming that this exception applies in the jail context, it would not immunize officials from liability for acts that are grossly negligent, reckless, or willful and wanton.

Because an inmate who is deprived of property as a result of jail officials' grossly negligent, reckless, or willful and wanton conduct has an adequate remedy under the ITCA, Plaintiff's due process claims based on the confiscation of his books are implausible.

## CONCLUSION

Plaintiff may proceed as outlined above. This Order does not guarantee that any of Plaintiff's claims will be successful. Rather, it merely finds that some are plausible, meaning that the claims will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[2] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an

---

[2] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under § 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to § 1915A and may be filed only in extraordinary circumstances.

early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

## ORDER

IT IS ORDERED:

1. Plaintiff may proceed on his First Amendment claims and his claims of unsanitary jail conditions. All other claims are dismissed.

2. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[3]

3. A process server has submitted an affidavit indicating that Defendants may have been served with process. However, to date, no response or appearance on behalf of the Defendants has been filed. Accordingly, the Clerk of Court is directed to forward courtesy copies of (1) the Complaint (Dkt. 3), (2) the process server's affidavit (Dkt. 7), and (3) this Order to **Bryan Taylor, Canyon County Prosecuting Attorney, 1115 Albany St., Caldwell, Idaho, 83605**. Defendants' response to the Complaint must be filed no later than **21 days** after entry of this Order. In the event Defendants were not properly

---

[3] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

served, counsel for Defendants may appear for the limited purpose of contesting service of process.

4. Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

5. The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

6. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 12

7. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

8. Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

9. After Defendants appear, the Court will issue an order governing the pretrial schedule in this case, including disclosure and discovery. *See* General Order 343, *In Re: Adoption of a Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases* (Feb. 8, 2019).

DATED: February 6, 2025

_____
David C. Nye
Chief U.S. District Court Judge