UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD GORDON LAINE,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>SHERIFF KIERAN DONAHUE;<br>CAPTAIN PATCHETT; LT. RUSSELL<br>DONNELLY; LT. ENGLE; SGT.<br>HAMMOND; CORPORAL BIGGS; and<br>DEPUTY C. JORDAN,<br><br>　　　　　　　Defendants. | Case No. 1:24-cv-00329-AKB<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

Plaintiff Richard Gordon Laine is a prisoner in the custody of the Idaho Department of Correction ("IDOC"). At the time of the events giving rise to Plaintiff's claims in this case, he was a pretrial detainee held in the Canyon County Detention Center ("CCDC").

Plaintiff brings his claims under 42 U.S.C. § 1983. Plaintiff asserts that his First Amendment rights were violated by the CCDC's policy of prohibiting inmates from receiving publications through the mail. Plaintiff also asserts that the conditions at the jail violated his right to due process because the restrooms, including the showers, were unsanitary. Plaintiff sues the Sheriff of Canyon County and several jail deputies.

Plaintiff has been allowed to proceed on his First Amendment publication claims against all Defendants for damages and equitable relief, as well as his due process conditions-of-detention claims against Sheriff Donahue for equitable relief only. *Init. Rev. Order*, Dkt. 9, at 6–8. All other claims have already been dismissed. *Id*. at 11.

MEMORANDUM DECISION AND ORDER - 1

Defendants have filed a Motion for Summary Judgment, which is now ripe for adjudication. Defendants argue that (1) Plaintiff lacks standing for purposes of his First Amendment claims; (2) Plaintiff's claims for equitable relief are moot; and (3) Plaintiff cannot prevail on the merits of his claims. *See generally Memo. in Supp. of Mot. Summ. J.*, Dkt. 33-1.

Having carefully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. *See* D. Idaho Loc. Civ. R. 7.1(d). Accordingly, and for the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment.

## STANDARD OF LAW GOVERNING SUMMARY JUDGMENT

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. In other words, "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

Where, as here, the party moving for summary judgment would not bear the burden of proof at trial, that party may prevail simply by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

In resolving a summary judgment motion, the Court must consider the facts in the light most favorable to the non-moving party, unless the non-moving party's version of the facts is "blatantly contradicted by the record[] so that no reasonable jury could believe it." *Scott v. Harris*,

MEMORANDUM DECISION AND ORDER - 2

550 U.S. 372, 380 (2007). If such a blatant contradiction exists, then there is no "genuine" dispute as to that fact. *Id.*

The moving party bears the initial burden to show that each material fact cannot be disputed. Material facts are those "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To show that the material facts are not in dispute, the moving party may cite to particular materials in the record or show that the non-moving party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson*, 477 U.S. at 247–48. Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact.

If the moving party meets this initial responsibility, the burden then shifts to the non-moving party to establish that a genuine dispute as to any material fact does indeed exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Once a moving party has sufficiently supported its motion for summary judgment, the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Instead, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Statements in a brief, unsupported by the record, cannot be used to create a dispute of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

MEMORANDUM DECISION AND ORDER - 3

The Court must consider "the cited materials" in considering a motion for summary judgment, but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Rather, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). That is, "if a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own." *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004); *see also Crawford-El*, 523 U.S. at 600 (1998) ("[I]f the defendant-official has made a properly supported motion [for summary judgment], the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the [elements of the claims].").

In opposing a motion for summary judgment, the non-moving party must submit at least "some competent evidence," such as a "declaration, affidavit, [or] authenticated document," to support his allegations or to dispute the moving party's allegations. *Soto v. Sweetman*, 882 F.3d 865, 873 (9th Cir. 2018) (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] ... argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order"). If the non-moving party fails to produce such evidence, or if the evidence produced is insufficient, the Court is "not required (or even allowed) to assume that the challenged factual allegations in the plaintiff's complaint are true." *Butler*, 370 F.3d at 963.

MEMORANDUM DECISION AND ORDER - 4

Affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997). In determining admissibility for summary judgment purposes, it is the content of the evidence, rather than its form, that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003).

Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988) (internal quotation marks omitted). Rather, the affidavit must contain "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document." *Id*. (quoting *United States v. Dibble,* 429 F.2d 598, 602 (9th Cir. 1970)). The Ninth Circuit has "repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Id*. (internal quotation marks omitted).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e). The Court must grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Though all reasonable inferences that can be drawn from the evidence must be drawn

in the light most favorable to the non-moving party, *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987), the Court is not required "to draw unreasonable inferences from circumstantial evidence," *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

In cases involving pro se inmates, courts liberally construe the pleadings and briefs and "should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). However, although pro se inmates are exempted "from *strict* compliance with the summary judgment rules," they are not exempted "from *all* compliance." *Soto*, 882 F.3d at 872.

## FACTUAL BACKGROUND

The Court will adopt Defendant's Statement of Undisputed Material Facts ("SUMF"), *see* Dkt. 33-2, in considering the pending Motion for Summary Judgment. The allegations Plaintiff offers in response to Defendant's Motion for Summary Judgment, *see Pl.'s Brief in Resp. to Mot. Summ. J.* (Dkt. 35), are deficient because they fail to cite admissible record evidence and because they are unsworn. *See Soto*, 882 F.3d at 872–73 (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] ... argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order"). Plaintiff has not gone beyond the pleadings and submitted evidence of his own. *See Butler*, 370 F.3d at 963. Because Plaintiff has failed to properly support his assertions and failed to properly address Defendant's assertions, the Court considers Defendants' factual allegations to be undisputed. *See* Fed. R. Civ. P. Rule 56(e)(2).[1]

---

[1] The attachments to Plaintiff's response brief are also deficient because they are not authenticated. Instead, Plaintiff has merely attached them to his response brief, which does not constitute proper authentication under Federal Rule of Evidence 901(a). *See Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988).

MEMORANDUM DECISION AND ORDER - 6

From August 3, 2023, to April 25, 2025, Plaintiff was a pretrial detainee held in the CCDC. *SUMF* ¶¶ 1–2. Plaintiff was later transferred to IDOC custody after he was convicted and sentenced in Idaho state court. Plaintiff's full-term release date is in 2056, with a possibility of parole as early as 2029. *Id*. ¶ 2.

Before January 2024, the CCDC Inmate Handbook Publications Policy permitted inmates to receive up to five publications through the mail. *Id*. ¶ 7. In January 2024, the jail updated the Publications Policy to transition "from paper to electronic publications." *Id*. ¶ 10. The new Publications Policy makes 70,000 books available on inmates' electronic tablets but prohibits most physical publications.[2] *Id*. ¶ 9.

The change in the Publications Policy was intended "to address the misuse associated with … physical publications, including concealing contraband and clogging toilets and drains … the staff time and resources associated with screening and responding to the same," and "inmate allegations of theft and misplacement of publications." *Id*. ¶ 10. For example, "[p]rior to the implementation of the prohibition on physical books/periodicals, physical mail and books were used as a method to sneak contraband into CCDC. This included book pages laced with drugs, sharp objects, unmonitored communications, and other forms of contraband contained within the pages." *Id*. ¶ 12. Additionally, inmates had been observed "chewing on the book pages to access the drugs that were 'painted' on the pages" as well as using book pages and periodicals "to clog drains [and] sinks, and to sling feces and other bodily fluids within the unit and between cells." *Id*. ¶¶ 13–14.

---

[2] The new policy does permit inmates to keep a physical copy of one primary religious text and one religious publication, as a religious accommodation "to ensure access when no eBook option is available and to permit notating and highlighting text." *Id*. ¶ 8.

MEMORANDUM DECISION AND ORDER - 7

Plaintiff objects to the new Publications Policy, claiming that the prohibition on physical books and other publications received by mail violates the First Amendment. The Complaint also asserts that the restrooms at the CCDC were unsanitary. Specifically, Plaintiff complains of black mold, maggots and other insects, and stagnant water caused by drainage problems. *Compl.* at 16.

## DISCUSSION

### 1.    Plaintiff Has Standing to Assert His First Amendment Claims

To state a case or controversy under Article III of the Constitution, a plaintiff must have standing to bring the suit. The minimum constitutional requirements for standing are as follows:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks, citations, and alterations omitted). The plaintiff bears the burden of establishing standing. *Id*. at 561.

Standing with respect to First Amendment violations has "unique" considerations, because "a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (internal quotation marks omitted), *abrogated on other grounds by Chiles v. Salazar*, 146 S. Ct. 1010 (2026). Standing requirements are, therefore, less strict in the context of First Amendment claims.

Defendants contend that Plaintiff's claims "relate[] to his personal preference for reading printed materials for entertainment." *Memo. in Supp. of Mot. Summ. J*. at 8. Defendants argue that, therefore, Plaintiff lacks standing to pursue his First Amendment claims because he has not suffered an injury in fact. The Court disagrees.

MEMORANDUM DECISION AND ORDER - 8

Plaintiff alleges that the change in policy violated his right to receive publications through the mail, and he is no longer able to receive publications in that manner. This is a sufficiently concrete injury to support Article III standing in the First Amendment context. *See Tingley*, 47 F.4th at 1067. Thus, the Court concludes that Plaintiff has standing to assert his First Amendment claims regarding the Publications Policy.

**2.      Plaintiff's Claims for Equitable Relief Are Moot**

Defendants point out that Plaintiff is not detained at CCDC anymore but was transferred to IDOC custody following his conviction and sentencing. It is well established that, if an inmate plaintiff is "no longer subject to the … conditions or policies he challenges," the inmate's claims for injunctive or declaratory relief are moot. *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012); *see also Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) ("Johnson was transferred to a federal correctional facility in Washington. Because he has demonstrated no reasonable expectation of returning to [his previous correctional facility], his claims for injunctive relief relating to [that facility's] policies are moot."); *Rhodes v. Stewart,* 488 U.S. 1, 2–4 (1988) (per curiam) (holding that declaratory judgment was moot because "[a] modification of prison policies … could not in any way have benefited either plaintiff, one of whom was dead and the other released" before entry of judgment). Thus, Defendants have met their initial burden of establishing that Plaintiff's transfer moots his claims for equitable relief.

Plaintiff has not rebutted Defendants' evidence of mootness. Plaintiff argues that his claims for equitable relief are not moot because "the average stay at Canyon County Jail is 30 days." *Pl.'s Brief in Resp. to Mot. Summ. J*. at 6. Plaintiff thus appears to invoke the "capable of repetition yet evading review" exception to mootness. That exception applies to "extraordinary cases in which (1) the duration of the challenged action is too short to be fully litigated before it ceases, and

MEMORANDUM DECISION AND ORDER - 9

(2) there is a reasonable expectation that the plaintiff will be subjected to the same action again."
*Alvarez*, 667 F.3d at 1064.

Plaintiff offers no admissible evidence for his contention that the average stay at CCDC is 30 days. Even if that is true, however, Plaintiff himself was detained in the jail for twenty months, and for fifteen months after the Publications Policy was changed. Further, the short duration of a challenged act is only the first prong of the evading-review exception to mootness. To fall within that exception, Plaintiff must also show a reasonable expectation that he will be detained at CCDC again.

Plaintiff has failed to do so. Plaintiff is not entitled to be released from IDOC custody until 2056. Though he will be eligible for parole in 2029, it would be entirely speculative to assume that Plaintiff will be paroled at that time. Moreover, for Plaintiff to be detained at CCDC again, he will have to violate the law again. The Court cannot presume that Plaintiff's own future behavior, which may or may not occur, constitutes a reasonable expectation of his return to CCDC. For these reasons, Plaintiff's claims for equitable relief, under both the First Amendment and Due Process Clause, must be dismissed as moot.

**3.     Defendants Are Entitled to Summary Judgment on Plaintiff's First Amendment Claims for Damages**

Given that Plaintiff's claims for equitable relief are moot, the only claims remaining for adjudication are Plaintiff's First Amendment claims for damages.

   ***A.     Legal Standards for First Amendment Claims***

To state a plausible civil rights claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an

MEMORANDUM DECISION AND ORDER - 10

affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

The United States Supreme Court outlined the standard governing inmates' First Amendment claims in *Turner v. Safley*, 482 U.S. 78 (1987). There, the Court examined a free speech issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions.

*Turner* held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. The Court identified four factors to consider when determining whether a prison regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89-93.

The deferential *Turner* analysis applies to pretrial detainees. *See Bull v. City & Cnty. of San Francisco,* 595 F.3d 964 (9th Cir. 2010). The United States Court of Appeals for the Ninth Circuit has clarified that, in applying the *Turner* test to pretrial detainees—who may not be punished—the legitimate penological interests in security and safety apply, but "the penological interests in punishment and rehabilitation may not be applicable outside the prison setting." *Id.* at 974 n.10. In considering claims of pretrial detainees challenging jail regulations or policies, "courts

MEMORANDUM DECISION AND ORDER - 11

must defer to the judgment of [jail] officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 322–23 (2012).

The standard announced in *Turner* appropriately allows jail officials substantial leeway in the management of their prisons because "[s]ubjecting the day-to-day judgments of [jail] officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison [and jail] administration." *Turner*, 477 U.S. at 89. Federal courts must apply the *Turner* test so as to "accord great deference to [jail] officials' assessments of their interests." *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

### B.    The New Publications Policy Is Reasonably Related to Legitimate Jail Safety and Security Interests

Defendants have submitted evidence that CCDC inmates were using physical publications to smuggle and conceal drugs and weapons, to clog toilets and drains, and to sling bodily fluids between cells. For several reasons, this evidence is sufficient to meet Defendants' initial burden of showing that the Publications Policy is reasonably related to legitimate jail interests in safety and security.

First, there is plainly a rational connection between transitioning to e-publications and the numerous harms caused by paper publications that officials sought to remedy. With paper publications no longer permitted at the jail, such publications cannot be used to cause the problems identified by jail officials.

Second, Plaintiff has an alternative means of reading paper publications—accessing publications electronically through a tablet, as the new Publication Policy provides. Indeed, this alternative method of accessing publications is not only available, but it is also objectively

MEMORANDUM DECISION AND ORDER - 12

superior. Instead of the five publications inmates were once able to access, inmates now have access to 70,000.

Third, requiring CCDC to return to paper publications instead of electronic publications would have a profound and negative impact on the safety and security of the institution, on jail deputies, and on other inmates. The safety and security of the jail would be compromised because the problems identified by jail officials could easily resume. Jail deputies would be forced to return to (1) policing inmates who use paper publications in the same illegal or grotesque manner they did in the past and (2) engaging in the attendant disciplinary proceedings, which would intrude on their other responsibilities. And the other inmates would be forced to give up their present access to 69,995 publications.

Finally, though alternatives to e-publications exist—specifically, the kind of paper publications the jail used to permit—they would cause the very same problems they once did. Defendants have met their initial burden of showing that the new Publications Policy is reasonably related to a legitimate governmental interest as required by *Turner* and, therefore, does not violate the First Amendment.

The burden now shifts to Plaintiff to show a genuine dispute of material fact as to whether the Publications Policy satisfies the *Turner* test. He has not done so. Plaintiff's response to Defendants' evidence consists only of unsworn and conclusory allegations. *See Beyene*, 854 F.2d at 1182; *Soto*, 882 F.3d at 873; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation [under Rule 8's pleading standards] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Accordingly, the Court will grant Defendants' Motion for Summary Judgment with respect to Plaintiff's remaining First Amendment claims.

MEMORANDUM DECISION AND ORDER - 13

## CONCLUSION

For the foregoing reasons, Defendants are entitled to judgment as a matter of law.

## ORDER

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 33) is **GRANTED**, and judgment will be entered in favor of Defendants.

DATED: May 13, 2026

*Amanda K. Brailsford*

Amanda K. Brailsford
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 14